NEW-YORK,
May, 1820.

JACKSON
v.
MARTIN.

</div>

<div align="center">

Judgment for the plaintiff.

</div>

<div align="center">

————◁✳▷————

</div>

JACKSON, *ex dem.* RUGGLES, *against* MARTIN.

EJECTMENT for lands in *New Windsor*, in the county of *Orange*. The parties agreed upon the following case, with liberty to either party to turn the same into a special verdict. *Henry M'Neely* being seised of a large real estate, made his will, dated *August* 31, 1795, in which he devised, as follows: " As for that worldly estate, wherewith it hath pleased God to bless me, I dispose thereof as follows: *First*, I give and bequeath unto my loving wife *Sarah M.* any room in my dwelling house, that she may choose to live in, after my decease. I, also, give her one cow, and fodder and pasture for both summer and winter, *from my homestead*

<div style="float:right;width:30%;font-size:small">

Where a testator devised a farm and messuage to his son, without words of inheritance, or expressing the quantity of the estate devised; with the directions of the testator, to furnish his mother with firewood and grain of all sorts, for her comfortable support; and in case she

</div>

should not choose to live in the dwelling house (included in the estate so devised) in the event of his son's marriage, that then he should build a house for her, on another part of the testator's land; this was held to be a charge on the *person* of the devisee, in respect to the estate devised, and that the devisee took an estate in *fee* by implication; but without this *personal* charge, or had it been on the *estate*, the devisee would have taken an estate for life only.

*farm*, for and during her life. I also give her of the produce and profits of my said farm, in such proportion of either, so as to render her a comfortable support through life.

" I give and bequeath to my eldest son *David M'Neely*, in addition to what I gave him heretofore, five pounds, to be paid him out of my real estate. I give and devise to my second son, *Robert M'Neely*, 118 acres of land, to be taken off the southerly end of my homestead farm, including my dwelling house, and other improvements, to be cut off by a line running parallel to the southerly side of my said farm ; he complying with the following injunctions ; that is, he, my said son *Robert*, shall allow to his said mother any room in my said dwelling house, that she may choose to live in, and keeping for her one cow, summer and winter, and to furnish her with a sufficient quantity of firewood and grain of all sorts, for her comfortable support. He my said son shall also allow to my daughter *Ruth*, one other room in my said dwelling house, so long as she remains unmarried, and no longer. I further give and bequeath unto him my said son *Robert*, one sorrel horse which is now six years old ; but in case my said son *Robert* neglects or refuses to provide for his mother as aforesaid, or in case she should not choose to live with him, if he marries a wife, in that case, I order that he build her a house on that part of my homestead farm, that is hereafter devised to my fourth son *James M.* and to provide for her, as aforesaid, or otherwise, to pay her fourteen pounds yearly, and every year, during her natural life. I give and devise to my fourth son *James M.* the remaining one hundred acres of my homestead farm, lying between the one hundred acres I lately conveyed, by deed and gift, to my eldest son *David M.* and that first devised to my second son *Robert* ; the division to be made so between my said sons *Robert* and *James* as to include the island field in *James's* part, he paying the legacies hereafter named."
The testator then gave personal legacies to his daughter *Ruth*, and added, " and it is further my will, that if my son *James M'Neely*, should die under age, not having lawful issue, in that case I give and devise his one hundred acres to my son *Robert M.*, and he to pay the legacy of one hundred

pounds to his sister as aforesaid. It is further my will, that if my son *Robert M.* should die, not having lawful issue, in that case I give and devise his one hundred and eighteen acres to my son *James M.*, and he to provide for his mother, in the same manner as *Robert* was to have done. Whatever remains of my personal estate, after the death of my wife, and after my just debts are paid, I give and bequeath the same to my son *Robert.*" The testator died prior to the year 1800. *Robert M.* leased the farm devised to him. The widow of the testator died in *July*, 1813. On the 2d of *October*, 1807, while the premises were occupied by the lessee of *Robert*, he sold and conveyed the premises in fee to *D. Stringham*, for three thousand dollars. *Ruth*, the sister, in *May*, 1812, also conveyed all her share or right in her father's estate, to *S.*, who also purchased the premises which were sold by the sheriff under a judgment and execution against *Robert* in 1811. *Stringham* conveyed the premises to *George Monell*, who conveyed the same to *H. R.*, who sold and conveyed them to the lessor of the plaintiff.

*James M'Neely* died under age, without lawful issue, and *Robert* survived him, and died in *April*, 1814, without lawful issue.

*Betts*, for the plaintiff, contended, that *Robert M.*, the testator's second son, took an estate in fee under the will. It is manifest, from the introductory clause, as well as other parts of the will, that the testator intended not to die intestate, but to devise his whole estate. (6 *Johns. Rep.* 191. 4 *Yeats's Rep.* 180. 1 *Dallas*, 226. 16 *Johns. Rep.* 537.) The word estate is sufficient to carry a fee. But the testator having imposed a charge on *Robert*, in respect to the estate devised, which is personal, he must be considered as taking a *fee* by implication. This is the settled law ; (8 *Johns. Rep.* 141. 10 *Johns. Rep.* 140. 6 *Johns. Rep.* 191. 5 *Bos. & Pull.* 430. 3 *Burr.* 1623. 5 *Term. Rep.* 13. 8 *Term. Rep.* 1. *Cruise's Dig. Devise*, tit. 38. ch. 11. s. 49.) and it makes no difference whether the charge is great or small.

*H. Bleecker*, contra, contended, that *Robert* took an estate

<div style="margin-top:1em; text-align:right;">
NEW-YORK,
May, 1820.

JACKSON
v.
MARTIN.
</div>

for *life* only, there being no words of perpetuity. (*Cruise's Dig. Devise*, tit. 38. ch. 11. s. 10. 16. 9 *Johns. Rep.* 222. 1 *Johns. Rep.* 198.) The introductory words to a will, are not, of themselves, sufficient to give a construction to it, unless the testator, afterwards, use words sufficient to carry his intention to dispose of all his estate into effect. (8 *Johns. Rep.* 144. 11 *East*, 219. 8 *Term Rep.* 54.)

Again; the charge upon *Robert*, the devisee, was not an absolute and certain charge on his person. The testator had before made the same provisions for the support of his wife, during her life, out of his estate, and he gives the part devised to *R.*, subject to the charge. The charge is on the testator's whole farm; not on the particular part devised to *R.*, (10 *Johns. Rep.* 148. 5 *Bos. & Pull.* 343.) Where it is *contingent*, whether the devisee will be liable to the charge, he takes only an estate for life. (8 *Johns. Rep.* 141. 2 *Atk.* 341. 6 *Co.* 16. *a. Dyer*, 371. *b.* 8 *East*, 141.)

Suppose, however, that these charges were sufficient to raise a fee by implication, the testator says, that if *Robert* dies without issue, then the estate devised was to go over to *James*; and *Robert* and *James* both died without issue. (3 *Burr.* 1623.)

SPENCER, Ch. J. delivered the opinion of the Court. The title of the plaintiff to recover, depends principally upon that clause in the will of *Henry M'Neely*, in which he devises 118 acres to his son *Robert*, to be taken off the southerly end of his homestead farm. The devise of this portion of his estate, contains no words of inheritance or perpetuity; after describing the 118 acres, the will proceeds, " *he complying with the following injunctions, that is, he, my said son Robert, shall allow to his said mother any room in my said dwelling house that she may choose to live in, and keeping for her one cow, summer and winter, and to furnish her with sufficient quantity of fire wood and grain of all sorts, for her comfortable support.*"

In the next clause of the will there is this direction, " *but in case my said son Robert neglects or refuses to provide for his mother as aforesaid, or in case she should not choose to live with him, if he marries a wife, in that case, I order that*

*he build her a house on that part of my homestead farm that is hereafter devised to my fourth son, James M'Neely, and to provide for her as aforesaid, or, otherwise, to pay her fourteen pounds yearly, and every year, during her natural life."*

By a previous devise to the testator's wife, he had given her any room in his house that she may choose ; " *also, one cow, and fodder and pasture for both summer and winter, from his homestead farm, for, and during her life, and of the profits and produce of his said farm, such proportion of either as to render her a comfortable support through life.*"

These are all the devises bearing on the point argued ; and the question is, whether *Robert M'Neely* took an estate for life only, in 118 acres devised to him, or a fee ? All the cases on the question were ably examined by the present Chancellor, in *Jackson* v. *Bull*, (10 *Johns. Rep.* 151.) He there said, that the distinction is, that where the charge is upon the estate, and there are no words of limitation, the devisee takes only an estate for life ; but where the charge is on the person of the devisee, in respect of the estate in his hands, he takes a fee, on the principle that he might otherwise be a loser. When the charge is on the person, he said, the devisee takes the estate on condition of paying the charge, and if he die in the life-time of the testator, the charge ceases ; or if he refuse to accept and perform, the devise is void, and the heir may enter ; and it was well observed, on that occasion, that the cases on this point are not altogether consistent. Where the devise was, " he paying, &c." and " so that she pay, &c." there are several cases, and particularly *Colyer's* case, (6 *Co. Rep.* 16.) which has always been regarded as high authority, which decide, that these expressions create a charge on the person, and convey a fee. So, where the words were, " all the rest of my goods and lands I give to *A.*, to discharge all things charged in my will ;" and, in another case, " my legacies and funeral expenses being thereout paid ;" in these cases the devisee was held to take a fee.

It will be observed that, in this case, the testator devised expressly to his wife, certain things which he enjoined on *Robert* to provide for her ; the choice of a room, keeping a cow in summer and winter, and the profits and produce of

his farm, for her comfortable support. The furnishing the grain is not, *eo nomine*, mentioned in the devise to her; but there is no devise to her of fire wood, nor is there any provision for building her a house, in the events specified in the will, except the injunction upon *Robert.*

I am satisfied, that the direction with respect to the fire-wood, and building a house for his mother, was a personal charge upon *Robert,* in respect to the land given to him, and not upon the land in his hands and that had he died in the life-time of the testator, or had he refused to accept the devise, the testator's widow could not have enforced the performance of these specific duties, as against the heirs of the land devised.

The devise to *Robert* is a conditional one, " he complying with the following injunctions," &c., and the cases to which I have alluded, appear to me to be precisely in point. Again, the building the house, though a contingent thing, was a direct charge upon the person of *Robert,* and the devise to him depended on his performing that injunction.

I do not mean to say, that the devise to the wife of so much of the profits and the produce of the farm, as will render her a comfortable support, means the same thing as the charge upon *Robert,* to furnish her a sufficient quantity of grain of all sorts, for her comfortable support; for the farm may not have yielded grain enough, or it might have been destroyed, without *Robert's* fault; and yet he was bound to provide it. There is great force in the argument, that this, also, was a personal charge in respect to the land devised.

I do not know that the case can be further illustrated. The decsions on the construction of wills, when applicable, and when uniform, become a rule of property; and it is the duty of the Court to compare the adjudged cases with, and apply them to, the case to be decided, without indulging themselves in speculations of their own, on the rationality of the distinctions taken by those who have preceded them. The lessor having deduced a title under *Robert M'Neely,* and the Court being of opinion that he took a fee in the

118 acres devised to him, the plaintiff is entitled to judgment according to the stipulation in the case.

Judgment for the plaintiff.